ROWELL v. BD. OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:ROWELL v. BD. OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 ROWELL v. BD. OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY
2021 OK CIV APP 7
485 P.3d 879
Case Number: 118529
Decided: 08/13/2020
Mandate Issued: 03/24/2021
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2021 OK CIV APP 7, 485 P.3d 879

 

ZACHARY ROWELL, AS SPECIAL ADMINISTRATOR IN THE MATTER OF THE ESTATE OF MARVIN A. ROWELL, Plaintiff/Appellant,
v.
BOARD OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY, OKLAHOMA, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
MUSKOGEE COUNTY, OKLAHOMA

HONORABLE WELDON STOUT, JUDGE

AFFIRMED

Stanley D. Monroe, STANLEY D. MONROE, PC, Tulsa, Oklahoma, for Plaintiff/Appellant,

Andy Artus, Jamison C. Whitson, COLLINS, ZORN, & WAGNER, PC, Oklahoma City, Oklahoma, for Defendant/Appellee.

Bay Mitchell, Presiding Judge:

¶1 In this case, a pretrial detainee at the Muskogee County jail died from injuries incurred while he was being moved about the facility. The decedent's estate brought various tort claims against several parties, including the county, alleging that the decedent's detainers used excessive force and operated with deliberate indifference to his rights. The only claim at issue here is the estate's claim for excessive force premised upon Article 2, Section 30 of Oklahoma's Constitution (Bosh claim). The trial court dismissed this claim, finding that it was barred by the Oklahoma Governmental Tort Claims Act's (OGTCA) exception to the state's waiver of liability for the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility ...." 51 O.S. §155(25). We affirm, finding that Bosh claims are subject to the OGCTA for all claims accruing after the 2014 amendments to that statute and that the §155(25) exception applies to immunize the county from liability on the facts as alleged.

BACKGROUND

¶2 The facts and claims are taken from the plaintiff's third amended complaint, filed in federal court prior to this cases's remand to the district court in Muskogee County.[1] In ruling on a motion to dismiss, as here, both the district court and this Court must presume these facts to be true. Gens v. Casady School, 2008 OK 5, ¶8, 177 P.3d 565, 568-69.

¶3 On January 30, 2016, Marvin Rowell was detained inside the Muskogee County jail. He was intoxicated and his detainers knew that he was intoxicated. They also knew him to be an alcoholic, as he had been jailed in Muskogee County numerous times in the past. Marvin was in handcuffs, but for reasons unknown, he was being escorted by two deputy sheriffs to a "restraint chair." According to the complaint, the decision to use the restraint chair was "unjustified and excessive." The supervisor of the deputy sheriffs was present, but she failed to prevent the deputies from moving Marvin to the restraint chair, which, was an act alleged to be"deliberately indifferent" to Marvin's rights. As Marvin was being escorted to the restraint chair, one of the deputies, "without provocation or justification ... forcibly handled [Marvin] by pushing him and/or causing or allowing him to fall." Marvin was seriously injured in the fall and later died from his injuries.

¶4 Marvin's estate sued Muskogee County and four county employees in state court. In its third amended petition, the estate alleged that the county, through its employees who had at all times been acting under color of law, and four of the county's employees, had violated Marvin's rights under both the state and federal constitutions. Specifically, the estate pled a claim against two of the individual defendants for violations of Article 2, Section 30 of Oklahoma's Constitution ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated ....") and a claim under 42 U.S.C. §1983. The estate also pled a claim against the county for negligence under the OGTCA.

¶5 Based on the §1983 claim, the defendants removed the case to federal court. The estate eventually filed its third amended complaint, where it made the same claims against the county and its employees referenced above, and added a claim under Article 2, Section 9 of Oklahoma's Constitution ("cruel or unusual punishments [shall not be] inflicted.").[2]

¶6 The county moved to dismiss the Article 2, Section 9 claim and the OGTCA negligence claim. The federal district court granted the motion in both respects, noting that Article 2, Section 9 claims generally only apply to parties incarcerated after a conviction, and not to pretrial detainees. As to the negligence claim, the court found that the exception to the state's waiver of sovereign immunity found in 51 O.S. Supp. 2016 §155(25), which applies to the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility ..." foreclosed liability for the county under the OGTCA. These findings of the federal district court are not challenged on this appeal.[3] In a subsequent order, the federal court granted the county's motion for summary judgment as to the estate's §1983 claims, leaving only the Article 2, Section 30 claim against the county pending. The federal district court declined to exercise jurisdiction over this state-law claim and remanded the case back to Muskogee County for further proceedings.

¶7 Once back in state court, the county moved to dismiss the estate's last-remaining claim, arguing that the estate failed to state a claim against the county. The thrust of the argument was that the Oklahoma Legislature's 2014 amendments to the OGTCA, which brought constitutional torts under the umbrella of the OGTCA, forecloses any state liability in this instance because the decedent's injury occurred during the county's "operation ... of any prison," which is an activity for which the State has not waived its immunity. 51 O.S. Supp. 2014 §155(25).

¶8 The trial court granted the county's motion, and the estate timely appealed without appellate briefing under Oklahoma Supreme Court Rule 1.36.

ANALYSIS

¶9 Our review of the order of dismissal is de novo. Miller v. Miller, 1998 OK 24 ¶15, 956 P.2d 887. A motion such as the county's should not be sustained unless it appears without doubt that the plaintiff can prove no set of facts that would entitle it to relief. Niemeyer v. U.S.F.& G., 1990 OK 32, ¶5, 789 P.2d 1318, 1321. "The purpose of a motion to dismiss is to test the law that governs the claim in litigation rather than to examine the underlying facts of that claim." Rogers v. Quiktrip Corp., 2010 OK 3, ¶4, 230 P.3d 853, 855-56

¶10 The estate made two basic arguments in its response to the county's motion to dismiss below.[4] Each is addressed in turn.

¶11 First, the estate contends that the existence of constitutional torts outside the OGTCA framework, as first contemplated in Washington v. Barry, 2002 OK 45, 55 P.3d 1036 and as held in Bosh v. Cherokee Cty. Bldg. Auth., 2013 OK 9, 305 P.3d 994, survived the Oklahoma Legislature's 2014 amendments to the OGCTA. We disagree.

¶12 In Bosh, the Oklahoma Supreme Court recognized a limited cause of action against the state and its subdivisions for claims of excessive force under Article 2, Section 30 of the Oklahoma Constitution, which prohibits unreasonable searches and seizures, notwithstanding the limitations of the OGTCA. Bosh, ¶33, p. 1004. Such a claim existed outside the strictures of the OGTCA, was to be applied retroactively, and looked to the common law doctrine of respondent superior to determine a municipality's liability for claims of excessive force. Id.

¶13 The prospect of such claims existing outside the OGTCA, however, was short-lived. The opinion in Bosh was published in February 2013 and in April of the following year the governor signed into law an amendment to the OGTCA clarifying that the statute was to apply to torts based on the Oklahoma Constitution. Specifically, the legislature defined "tort" under the OGTCA to mean "a legal wrong, independent of contract, involving violation of a duty imposed by general law, statute, the Constitution of the State of Oklahoma, or otherwise ...." Id. (codified at 51 O.S. Supp.2014 §152) (emphasis added). Further, the scope of the state's waiver of liability was modified to expressly include constitutional torts.[5] In Barrios v. Haskell Cty. Pub. Facilities Auth., 2018 OK 90, 432 P.3d 233, the Oklahoma Supreme Court was asked to expand Bosh claims to inmates with claims for negligent medical care under Sections 7 and 9 of Article 2 of the Oklahoma Constitution. The Court declined the invitation and applied the OGTCA to bar the inmates' constitutional claim. Id., ¶2, p. 235.

¶14 The estate argues that Barrios has no application here because its claim is under Section 30, not Sections 7 and 9, of the Oklahoma Constitution. Under this theory, Bosh claims premised on Section 30 remain viable outside the OGTCA framework. However, the reasoning in Barrios, which is a straightforward application of the legislature's enacted definition of "tort" applies equally to any constitutional tort, not just those at issue in that case. We hold, therefore, that although Bosh claims and other constitutional torts survived the 2014 amendments to the OGTCA, the OGTCA applies to limit the state and its subdivisions' immunity to suit for such claims.

¶15 Second, because we find such torts must pass through the framework of the OGTCA, we must analyze whether the exception the district court applied below, found in 51 O.S. Supp.2016 §155(25), applies to subvert the government's waiver of its immunity, found in §153.

¶16 The estate's argument in this regard is, in effect, that applying the §155(25) exception in this case is unfair because similarly-situated persons, that is, people in custody but not yet inside the jailhouse walls, are treated differently. It argues: "Does [the county] contend that if the act of pushing Mr. Rowell occurred on the sidewalk adjacent to the jail, then no immunity would apply?" ROA 107, Plaintiff's Response in Opposition to Board of County Commissioners' Motion to Dismiss, pg. 3.

¶17 This argument is better presented to the legislature than a court of law. See Barrios, ¶¶14-17, pp. 239-40 (citing Ziglar v. Abbasi, 582 U.S. ___, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017)). We, like the district court below, are restricted by the plain text of §155(25), which exempts the county from immunity if it is engaged in the "operation ... of any prison, jail or correctional facility ...." 51 O.S. Supp. 2016 §155(25). Thus, the only question appropriate for us to address is whether the county's employees, who were alleged at all relevant times to have "acted under color of state law pursuant to [their] employment as deputy sheriff[s]," were performing actions within the scope of §155(25).

¶18 The estate points to no case law holding that the act of moving a detainee from one part of the prison to another, if done within the scope of the employment, as is required for state liability under the OGTCA,[6] does not fall under the §155(25) exception. The exception contained in §155(25) has been applied quite broadly. In Barrios, for example, there seemed to be no question that the provision of medication, even if done negligently, fit within the exception, as the possibility that it did not was not so much as discussed in the Court's opinion. Barrios, ¶12, pp. 233, 239 (concluding "because these 'constitutional' torts are now clearly 'torts' governed by the GTCA, the GTCA's specific prohibition against tort suits arising out of the 'operation or maintenance of any prison, jail or correctional facility' bars the claims at issue here."). In Medina v. State, the Court gave a broad reading to §155(25), stating "it is obvious that the purpose and intent of § 155([25]) is to protect the state and political subdivisions from tort liability for loss resulting from the functions of the officers and employees performed in the operation of a penal institution." 1993 OK 121, ¶9, 871 P.2d 1379, 1383. In Redding v. State, the Court said the exception embraces "the myriad of actions involved in the day to day operation of a prison ...." 1994 OK 102, ¶7, 882 P.2d 61, 63. In Horton v. State, the Court said the language immunizes the state "for the infinite numbers of activities that are involved in prison operations ...." 1996 OK 137, ¶8, 915 P.2d 352, 354 (emphasis added).

¶19 Although there is no case precisely on point, the Supreme Court's broad reading of this exception makes it impossible to imagine any act of a prison's employee, done within the scope of employment, that is not also in furtherance of the operation of the prison. Certainly, an employee's act of moving an inmate from one part of the jail to another, if done within the scope of employment, must be viewed as an operation of the prison under the Oklahoma Supreme Court's expansive reading of the exception. Accordingly, we find that §155(25) acts to bar any tort claim by the estate against the county in this case, under the Oklahoma Constitution or otherwise.

¶20 AFFIRMED.

SWINTON, V.C.J., and GOREE, J., (sitting by designation) concur.

FOOTNOTES

[1] The parties disagree as to whether we should look to the third amended petition, filed in state court prior to removal to federal court, or the third amended complaint, filed in federal court prior to remand back to state court, when determining the applicable facts and remaining claims. The estate appears to believe the petition should control, as the estate continually references the petition in its pleadings below. The county, on the other hand, references the complaint as the governing instrument and included a copy of that pleading in its supplementation of the record.

We agree with the county and look to the third amended complaint to determine the facts as pled and the remaining claims. Upon removal, a federal district court acquires exclusive jurisdiction over former state-law litigation. 14C Fed. Prac. & Proc. Juris. § 3738 (Wright & Miller) (Rev. 4th ed.). The Federal Rules of Civil Procedure govern and the case proceeds as if it had been brought in federal court in the first instance. Id. When a party amends its state-court petition with a federal-court complaint, the petition is considered withdrawn and abandoned. Davis v. TXO Prod. Corp., 929 F.2d 1515, 1517 (10th Cir. 1991). Thus, we look to the third amended complaint to determine the facts and remaining claims after remand.

[2] Specifically, the third amended complaint stated six separate claims. Claims (1) through (3) alleged §1983 violations against various defendants, including the county; claim (4) alleged a violation of the Oklahoma Constitution, Article 2, Section 30 against the county; claim (5) alleged a violation of the Oklahoma Constitution, Article 2, Section 9 against the county; and claim (6) was the OGTCA negligence claim against the county.

[3] The estate disputes whether the OGTCA claim survived the federal district court's order, inviting this Court to review the third amended petition. However, as discussed in note 1, supra, we look to the third amended complaint and the federal district court's orders dismissing claims made in that complaint and remanding the case to state court to determine the claims remaining after remand. The federal court's order is abundantly clear that the estate's OGTCA claim was dismissed and that the only claim remaining after remand was the claim under Article 2, Section 30 of Oklahoma's Constitution. Nevertheless, for the same reasons we find the state court's dismissal of the remaining state constitutional claim was correct, the estate's OGTCA claim would have also been appropriately dismissed by the state district court had it survived remand.

[4] The estate made a third argument, which we will briefly address here. The estate argued below that the trial court should not have granted the county judgment as a matter of law due to alleged procedural defects in the county's motion to dismiss. Specifically, the estate argued in its response brief below that the court should not grant "summary judgment" because the county failed to comply with District Court Rule 13, which governs motions for summary judgments. The argument is based on the fact that the county's motion to dismiss, titled "Defendant Board of County Commissioners' Motion to Dismiss and Brief in Support," which was brought pursuant to 12 O.S. §2012(B)(6) for failure to state claim, and which attached no evidentiary support, stated in the title to one of its propositions that the county was entitled to "summary judgment." However, it is obvious when reading the whole of the county's motion that it is one to dismiss for failure to state a claim as opposed to one for summary judgment. The trial court did not err in denying the county's motion on this ground.

[5] "The liability of the state or political subdivision under The Governmental Tort Claims Act shall be exclusive and shall constitute the extent of tort liability of the state, a political subdivision or employee arising from common law, statute, the Oklahoma Constitution, or otherwise." 2014 Okla. Sess. Laws ch. 77, §2 (codified at 51 O.S. Supp. 2014 §153(B)) (emphasis supplied).

[6] 51 O.S. Supp. 2015 §153(A) ("The state or a political subdivision shall not be liable under the provisions of The Governmental Tort Claims Act for any act or omission of an employee acting outside the scope of the employee's employment."). The act defines "scope of employment" as "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority ...." 51 O.S. Supp.2015 §152(12).

Of course, a plaintiff may make allegations against an employee of the state individually if the allegations are that the employee was acting outside the scope of his employment. Id., §153(C) (An individual "may be named as defendant under alternative allegations that such person did not act within the scope of employment."). The surviving claim here, however, was made against the county only.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 32, 789 P.2d 1318, 61 OBJ 875, Niemeyer v. U.S. Fidelity and Guar. Co.
Discussed
 1993 OK 121, 871 P.2d 1379, 64 OBJ 2872, Medina v. State
Discussed
 1994 OK 102, 882 P.2d 61, 65 OBJ 3052, Redding v. State
Discussed
 1996 OK 137, 915 P.2d 352, 67 OBJ 396, HORTON v. STATE
Discussed
 2002 OK 45, 55 P.3d 1036, WASHINGTON v. BARRY
Discussed
 2008 OK 5, 177 P.3d 565, GENS v. CASADY SCHOOL
Discussed
 2010 OK 3, 230 P.3d 853, ROGERS v. QUIKTRIP CORP.
Discussed
 2013 OK 9, 305 P.3d 994, BOSH v. CHEROKEE COUNTY GOVERNMENTAL BUILDING AUTHORITY
Discussed
 2018 OK 90, 432 P.3d 233, BARRIOS v. HASKELL COUNTY PUBLIC FACILITIES AUTHORITY; FOUTCH v. TURN KEY HEALTH
Discussed
 1998 OK 24, 956 P.2d 887, 69 OBJ 1172, MILLER v. MILLER
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Cited
Title 51. Officers
 Cite
Name
Level

 51 O.S. 155, Exemptions From Liability
Discussed at Length
 51 O.S. 152, Definitions
Discussed
 51 O.S. 153, Liability - Scope - Exemption
Discussed


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA